**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**TERRIE ADAMS (6) and
CRAIG BROOMBAUGH (10),**

    Defendants.

Case No. 14-40005-06-10-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on defendants' Terrie Adams and Craig Broombaugh's Joint Motion to Exclude Untimely Disclosed Expert Testimony (Doc. 877). The government responded (Doc. 884). For reasons explained below, the court grants defendants' Motion in part and denies it in part.

### I.  Background

The court held a motion hearing in this case on January 26, 2017. One of the motions at issue was the defendants' Joint Motion to Exclude Untimely Disclosed Expert Testimony (Doc. 877). Defendants Michelle Reulet and Craig Broombaugh initially filed the Motion. Defendant Terrie Adams joined the Motion. Doc. 886. Ms. Reulet has since pleaded guilty.

In their Motion, defendants assert that the government's Third Amended Notice of Intent to Use Expert Witnesses ("Third Amended Notice") constitutes an untimely disclosure. Defendants contend that the government has disclosed several new witnesses after the deadline established by the Scheduling Order and unfairly expanded the scope of several other expert witnesses. Specifically, defendants oppose newly disclosed testimony from Mr. Jason

Henninger, Dr. Jordan Trecki, Dr. Daniel Willenbring, Dr. Arthur Simone, Mr. Lyndell Griffin, Mr. Lee Roediger, and Mr. Gorden Kwan.  The defendants contend that the government's Third Amended Notice, filed 60 days before trial, prejudices them by negating their ability to challenge the admissibility of the disclosed experts' testimony.

The deadline for filing Pretrial Motions and Motions in Limine was November 22, 2016.  The government filed its Third Amended Notice of Intent to use Expert Testimony on December 1, 2016.

## II. Legal Standard

Fed. R. Crim. P. 16(a)(1)(G) provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."  Fed. R. Evid. 702 governs admissibility of expert testimony.  It provides that a witness may testify as an expert if they are "qualified as an expert by knowledge, skill, experience, training, or education" in "scientific, technical, or other specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.

Rule 701 governs the admissibility of lay opinion testimony by persons who do not qualify as experts.  It provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is" rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or to determining a fact in issue, and not based on "scientific, technical, or other specialized knowledge within the scope of Rule 702."  Rule 16(a)'s disclosure requirement does not apply to non-expert witnesses.  *See United States v. McIntosh*, No. 11-20085-01-KHV, 2016 WL 4159723 (D. Kan. Aug. 5, 2016) (finding that the

government was "not required to give prior notice of" testimony of witnesses who are not called as "expert witnesses" under Rule 702).

If a party fails to comply with its disclosure obligations under Fed. R. Crim. P. 16, the court has several sanctions at its disposal. For instance, the court may: (1) order that party to permit discovery or inspection; (2) grant a continuance; (3) prohibit the party from introducing the undisclosed evidence; or (4) enter any other order that is just under the circumstances. Fed. R. Crim. P. 16(d)(2). The Tenth Circuit has identified several factors that courts should consider when deciding whether a sanction is appropriate. *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988). They are: (1) the reason for the delay, including whether the government acted in bad faith; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance. *Id.*

Defendants do not contend that the government acted in bad faith when it filed its Third Amended Notice after the operative deadline. And, because this case already has celebrated its third anniversary, "curing the prejudice with a continuance" is not an option the court will consider. So, when deciding whether to exclude the newly disclosed testimony, the court considers only "the extent of prejudice to the defendant as a result of the government's delay." *See Id.*

### III.   Analysis

With these standards in mind, the court turns to the government's Third Amended Notice. In it, the government disclosed testimony for seven of its expert witnesses. Defendants contend these disclosures were untimely, and as consequence, prejudicial. Defendants assert that the lateness of these disclosures deprives them of any meaningful ability to challenge the admissibility of the newly disclosed testimony. The court addresses the testimony of each of the

government's expert witnesses individually, and in the sequence that they are listed in the government's Third Amended Notice.

### A. Mr. Jason Henninger

The government disclosed that Mr. Henninger will testify about his Lab Report that was provided to the defendants in 2015. Defendants never specify why this aspect of the government's Third Amended Notice was or prejudicial. The court thus denies defendants' Motion to exclude testimony from Mr. Henninger.

### B. Dr. Jordan Trecki

The government disclosed the following addition to Dr. Trecki's testimony:

> Dr. Trecki will discuss his observations from his work at the DEA regarding the manner in which illicit drug manufacturers will change the chemical compounds used in their products over time in response to law enforcement activities, and the effects of those changes on his work at the DEA and on the DEA's and Congress's reactions to those changes. Dr. Trecki will also offer the opinions that (l) methamphetamine and cocaine are stimulants and have substantially similar stimulant effects (such as increased heart rate, euphoria, sleeplessness) as methcathinone, amphetamine, and MDPV; (2) THC is an hallucinogen and has substantially similar hallucinogenic effects as JWH-018; and (3) although smokeable synthetic cannabinoids are often represented to mimic the effects of marijuana, the analogue drugs are often much more potent, and, unlike marijuana, have been reported to cause seizures, heart attack, multi-organ failure, and death.

Doc. 865 at 2–3. The court divides its analysis of Dr. Trecki's newly disclosed testimony into three categories.

First, the court considers the testimony about his observations of how drug manufacturers change the compounds used in their products, the effects of those changes on his work at the DEA, and on DEA and Congress's reactions to those changes. On its face, this testimony does not qualify as Rule 702 expert testimony. Instead, it is testimony "rationally based on the

4

witness's perception . . . [potentially] helpful to clearly understanding the witness's testimony or to determining a fact in issue." *See* Fed. R. Evid. 701.  As such, it was not subject to Rule 16's disclosure requirement and the government did not violate Rule 16 when its disclosure postdated the deadline.[1]

The second category of Dr. Trecki's disclosed testimony is that "(1) methamphetamine and cocaine are stimulants and have substantially similar stimulant effects . . . as methcathinone, amphetamine, and MDPV (2) THC is an hallucinogen and has substantially similar hallucinogenic effects as JWH-018; and (3) although smokable synthetic cannabinoids are often represented to mimic the effects of marijuana, the analogue drugs are often much more potent . . . ." Doc. 865 at 2–3.  This is the kind of "scientific, technical, or other specialized knowledge" testimony governed by Rule 702, and the government's disclosure of this testimony was thus untimely.  But defendants have not shown how they have been prejudiced by this disclosure because they will have an opportunity to cross-examine Dr. Trecki about this testimony at the February 3, 2017 hearing.  Defendants can try to marshal information about this testimony then and pursue a challenge to it.  Defendants thus have not been prejudiced by this disclosure.

Finally, the government disclosed that Dr. Trecki will testify about the serious effects of analogue drugs including causing "seizures, heart attack, multi-organ failure, and death." Doc. 865 at 3.  This likely qualifies as expert testimony, but it is of the type that the court addressed in the 2016 Limine Order.  *See* Doc. 602.  In his earlier limine motion, Mr. Broombaugh asked the

---

[1] This is not to say that all of Dr. Trecki's opinions are necessarily admissible at trial. For instance, Dr. Trecki's anticipated testimony about the "DEA's and Congress's reactions to [ ] changes" by illicit drug manufacturers concerns the court. Doc. 865 at 2. Fed. R. Evid. 602 permits any witness to testify from personal knowledge about the sequence of historical events known by the witness. So, if Dr. Trecki has personal knowledge about what the DEA and Congress did and when they did it, that seems like fair game. But the government's disclosure hints that it might ask Dr. Trecki to do more than that, *i.e.*, Dr. Trecki may offer opinions about "Congress's reactions to those changes" by illicit drug manufacturers. If this portends that the government will ask Dr. Trecki to opine *why* Congress did this or that, such an opinion hardly seems like a lay opinion within Rule 701. It also seems like a stretch to suggest that such testimony could satisfy Rule 602's personal knowledge requirement.

court to preclude the government from calling any drugs "dangerous" or otherwise eliciting evidence of potential harms related to the substances at issue. Doc. 602 at 17. The court held that it would determine the relevance and admissibility of the evidence in the context of trial. *Id.* But it also held that "the government cannot call the drugs 'dangerous' or refer to their potential harms in its opening statement." Doc. 602 at 18. Further, the court held that "statements about the drugs endangering people, without first adducing evidence that any dangerous propensities are relevant to a fact in issue in this case, would inflame the jury." *Id.* So, the court has cautioned the government "that evidence about a drug's effects must come from witnesses or admissible exhibits." *Id.* "And the government must adduce relevant proof of the drug's harmful, dangerous, or ill effects, before referencing 'dangers,' 'harms,' and the like in front of the jury" *Id.* The court ruled that "[c]ounsel should approach the [c]ourt out of the presence of the jury to inquire whether this burden has been met before using any such bombastic language at trial." *Id.* This ruling likewise applies to Dr. Trecki's testimony about harmful effects of analogue drugs, including that they cause "seizures, heart attack, multi-organ failure, and death." Doc. 865 at 3.

In sum, if some of the government's disclosures about Dr. Trecki's testimony were untimely, defendants have not shown how it prejudiced them because they will have an opportunity to cross-examine Dr. Trecki on February 3, 2017. The court thus denies defendants' Motion to exclude testimony of Dr. Trecki.

### C.  Dr. Daniel Willenbring

The government proposed the following addition to Dr. Willenbring's testimony:

> In addition to the testimony previously summarized, Dr. Willenbring will discuss his observations from his work at the DEA regarding the manner in which illicit drug manufacturers will change the chemical compounds used in their products over time in

> response to law enforcement activities, and the effects of those
> changes on his work at the DEA and on the DEA's and Congress's
> reactions to those changes.

Doc. 865 at 3. Like Dr. Trecki's testimony, testimony discussing Dr. Willenbring's observations from his work at the DEA about how drug manufacturers change the compounds used in their products and the effects of those changes on his work does not qualify as Rule 702 expert testimony. Instead, it is testimony "based on the witness's perception . . . helpful to clearly understanding the witness's testimony or to determining a fact in issue." *See* Fed. R. Evid. 701. Thus, this testimony was not subject to Rule 16's disclosure requirement and the government did not violate Rule 16 when its disclosure postdated the deadline. Also, as with Dr. Trecki's testimony, the court is skeptical about Dr. Willenbring's qualifications to testify about "Congress's reactions to [the] changes." Doc. 865 at 3. Under Rule 701, Dr. Willenbring may testify about such reactions only if it takes the form of purely historical and factual testimony. The court thus denies defendants' Motion to Exclude testimony of Dr. Willenbring.

### D.  Dr. Arthur Simone

The government disclosed ten bullet points summarizing testimony for Dr. Simone, which the defendants contend was untimely and thus prejudicial. In its first two points, the government disclosed that Dr. Simone will offer opinions that the products the defendants manufactured were "street drug alternatives" and were, in fact, drugs, "because there were intended to affect the structure of any function of the human body, that is, there were intended to get the user 'high.'" Doc. 865 at 3. This is new testimony, and thus its disclosure was untimely. And, this untimely disclosed testimony could prejudice the defendants because they have not had time to adequately retain their own expert, or research and draft appropriate pleadings. The court thus grants defendants' Motion to exclude this portion of Dr. Simone's testimony.

The rest of Dr. Simone's testimony—bullet points two through eight—offers his expert opinion about misbranded drugs.  This testimony was already disclosed to defendants in the government's disclosures for Dr. Lee.  The government disclosed Dr. Simone to replace Dr. Lee.  Defendants have not been prejudiced because the government simply replaced one witness with another and the new witness will present the same opinions.  Defendants have had ample time to retain their own experts to challenge this testimony.  At the January 26 hearing, defense counsel attacked this testimony as irrelevant and unhelpful.  But counsel could have made this attack long ago when the testimony was disclosed in November 2015.  And defendants still can challenge its relevance when the testimony is offered at trial.  Defendants thus have not shown how they were prejudiced by Dr. Simone's disclosure.  The court thus denies defendants' Motion to exclude testimony from Dr. Simone.

### E.  Mr. Lyndell Griffin

At the hearing on January 26, 2017, the government represented that it no longer planned to offer Mr. Griffin's testimony in light of the parties' stipulations.  The court thus denies defendants' Motion to exclude testimony from Mr. Griffin as moot.

### F.  Mr. Lee Roediger

At the hearing on January 26, 2017, the government represented that it no longer planned to offer Mr. Roediger's testimony in light of the parties' stipulations.  The court thus denies defendants' Motion to exclude testimony from Mr. Roediger as moot.

### G.  Mr. Gorden Kwan

The government proposes that Mr. Kwan will testify about "his forensic examination of the seized computers, and about his recovery of various documents from the computers."  Doc. 865 at 5.  The government disclosed that Mr. Kwan "may also provide testimony" about:

8

> (1) hash values are "digital fingerprints" that can be used to authenticate a copy of the data retrieved from a hard drive; (2) what parts of an email are machine-generated; (3) how QuickBooks operates to produce reports old data; (4) how texts are retrieved from a phone and can be placed in a "spreadsheet" of information regarding the texts, including the date and time sent, the phone numbers associated with the senders and receivers, and the contents of the text; (5) how emails are retrieved from a computer; (6) what metadata is and how it is used to identify relevant information about documents and emails stored in a computer; and (7) how website archives can be retrieved by using the Wayback Machine. Mr. Roediger will also identify specific records retrieved.

Doc. 865 at 5–6. This does not seem like the kind of "scientific, technical, or other specialized knowledge" testimony requiring early disclosure. While the court will know more when Mr. Kwan actually testifies, it appears that information about how "hash values" can authenticate copies of data retrieved from a hard drive and how "QuickBooks" operates is the type of testimony "rationally based on the witness's perception" and thus governed by Rule 701. Indeed, in its Response, the government contends that Mr. Kwan's testimony is necessary to authenticate evidence and prove the chain of custody. This is not expert testimony, and so early disclosure was not required. The court thus denies defendants' Motion to exclude testimony from Mr. Kwan.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Joint Motion to Exclude Untimely Disclosed Expert Testimony (Doc. 877) is granted in part and denied in part, as set forth fully in this Order.

**IT IS SO ORDERED.**

**Dated this 31st day of January, 2017, at Topeka, Kansas.**

>                                   s/ Daniel D. Crabtree_____
>                                   Daniel D. Crabtree
>                                   United States District Judge

9